UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

H.A. and L.Y.

     Plaintiffs,

v.

KHUSHAL HOSPITALITY, LLC,
KHUSHAL HOSPITALITY
MANAGER, LLC, and
JOHN DOES 1-5,

    Defendants.

CIVIL ACTION FILE

NO.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs file their Complaint and show the Court as follows:

## Introduction

1.

During 2014 and 2015, when H.A. and L.Y. were each minors, they were victims of child sex trafficking at the Motel 6 located at 1200 Virginia Avenue, Atlanta, GA 30344. H.A. and L.Y. were repeatedly sold for sex by the same trafficker at the Motel. As set forth herein, Defendants are liable to Plaintiffs for damages arising from the crimes and harms committed against them. Given the nature of the case, Plaintiffs are identified in this Complaint by their initials. Plaintiffs' counsel will disclose their full name to defense counsel as soon as they

1

are known or as soon as an appropriate protective order is in place.[1]

2.

Defendants KHUSHAL HOSPITALITY, LLC and KHUSHAL HOSPITALITY MANAGER, LLC, (hereinafter referred to each as the "LLC" or a "Defendant") are Georgia limited liability companies. Each of the LLCs, individually and/or jointly, owned and/or operated and profited from the subject Motel.

3.

Other individuals and/or entities may also be responsible for the ownership and/or operation of the Motel, but their identity is currently unknown to Plaintiffs, so Plaintiffs have used pseudonyms John Does 1-5 as placeholders for the other individuals and/or entities, and once Plaintiffs learn the true identities of same, Plaintiffs will amend this Complaint to substitute the true identities in place of the pseudonyms John Does 1-5.

4.

At all times relevant herein, Defendants owned, operated, maintained, controlled, managed, and/or were responsible for securing the Motel located at 1200

---

[1] Plaintiffs will be filing a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the sex trafficking of H.A. and L.Y. Plaintiffs' anonymity will provide for their own personal safety and will protect Plaintiffs from the public disclosure of details which are intimate and personal in nature.

Virginia Avenue, Atlanta, GA 30344, from which Defendants benefited financially.

5.

Defendants knew or should have known of the rampant sex trafficking and prostitution at the Motel, including the sex trafficking of H.A. and L.Y., in particular, because:

    a.    H.A. and L.Y.'s sex trafficker rented multiple rooms at the Motel and kept his sex trafficking victims in separate rooms so they could be sold for sex to different buyers at the same time;

    b.    H.A. and L.Y. would be forced to wear revealing clothing in and around the Motel property, such that their dress indicated that they were selling sex;

    c.    H.A. and L.Y.'s sex trafficker had other accomplices who would also participate in H.A. and L.Y.'s trafficking. In particular, one large, heavyset man would serve as a lookout and normally wait outside the Motel's side door in his car and watch as buyers came in and out of the side door to then go to H.A. and L.Y.'s rooms to have sex with them;

    d.    The Motel employees maintained close, friendly relationships with Plaintiffs' sex trafficker and his accomplices and would cater to their needs, including agreeing not to call the police, assisting the

trafficking victims when they were locked out of their rooms or needed personal items, and otherwise generally not interfering with the trafficking operation;

e.  H.A. and L.Y. would be sold to multiple different men per day who would accompany them into their Motel rooms for short visits;

f.  H.A. and L.Y. interacted with the Motel staff, including the housekeepers and the front desk workers, on numerous occasions. On multiple occasions, H.A. and/or L.Y. would get locked out of their Motel rooms, and even though the rooms were rented in the trafficker's name, the front desk workers knew that H.A. and L.Y. were living in the rooms and would give H.A. and/or L.Y. new key cards to get back into the rooms. The Motel housekeepers would also frequently bring H.A. and/or L.Y. new towels because they would have to shower multiple times per day after being sold for sex. The housekeepers would also empty out trash cans with clear trash bags containing multiple used condoms. The housekeepers would also bring H.A. and/or L.Y. tampons because they knew them and knew they didn't have any;

g.  On one occasion in particular, H.A. recalls that she got locked out of her room, and she needed to retrieve a zebra print duffel bag that

had been left in her room.  The front desk let her back into the room, and housekeeping was there at the time.  Housekeeping had cleaned up numerous items from around the room, including boxes of condoms, other items used for sex, drugs, and other personal items, and put them back in the duffel bag.  The duffel bag had been taken to the office and the front desk worker then found it and returned it to H.A.;

h.    Defendants and/or their employees rented rooms at the Motel to sex traffickers and drug dealers on an ongoing basis, in some instances for many weeks at a time; and

i.    Defendants knew or should have known of rampant sex trafficking generally in the area where the Motel was located, and Defendants knew or should have known of the rampant sex trafficking at the Motel specifically.

6.

Despite all of the above knowledge, Defendants negligently and recklessly failed to take appropriate and reasonable measures to prevent sex trafficking from occurring at their Motel, including Plaintiffs' sex trafficking in particular, and instead actively took steps to allow the trafficking to continue.

5

7.

At all times relevant to this Complaint, H.A. and L.Y. were minor child victims of sex trafficking at Defendants' Motel.

8.

Sex trafficking and prostitution were common occurrences at the Motel and Defendants chose to ignore, allow, condone, facilitate, support, or permit such activity at the Motel. Defendants are liable to Plaintiffs for the Motel's employees and agents' actions and failures to act. Defendants' liability to Plaintiffs is straightforward:

    a. The Trafficking Victims Protection Reauthorization Act ("TVPRA") provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by receiving anything of value from participating in a venture which that person ***knew or should have known*** has engaged in an act in violation of the TVPRA." 18 U.S.C. § 1595(a). Defendants' Motel knowingly benefited from participation in a venture that it knew or should have known engaged in an act in violation of the TVPRA. While operating the Motel, a common undertaking involving risk and potential profit, Defendants (i) rented a room to Plaintiffs' trafficker so Plaintiffs could be sold for sex at the Motel, and (ii) did so despite

6

what Defendants knew or should have known about Plaintiffs being victims of sex trafficking at the Motel. As a result of Defendants and/or their employees or agents' conduct, Plaintiffs suffered physical and mental harm, and Defendants are liable to Plaintiffs for the damages arising from those harms under the TVPRA. Additionally, because Plaintiffs were minors when they were trafficked at the Motel, Masha's Law, 18 U.S.C. § 2255, provides an avenue to pursue a civil remedy for the substantive violation of 18 U.S.C. § 1591, with the same substantive analysis under the § 1595 claim above; and

b.    The Motel constituted a public nuisance under Georgia law because the Motel negligently or recklessly turned a blind eye and permitted illegal activities to occur at the Motel, including rampant prostitution, sex trafficking, crimes against women, drugs, violence, and other dangerous illegal activity. As a direct result of this nuisance, Plaintiffs were sold for sex at the Motel, causing them special damages.

9.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendants, the allegation is that Defendants engaged in the act, deed, or conduct

7

personally or through one or more of their officers, directors, agents, employees, or representatives who were actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Motel.

10.

Further, a person under the age of 18 cannot consent to having sex in exchange for money under any circumstance. Any sale of sex in exchange for money involving a person under eighteen (i.e., "minor sex trafficking") is *criminal* sex trafficking under federal law. 18 U.S.C. § 1591(a). Minor sex trafficking does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), *et seq.* Every person who engages in commercial sex with a minor is trafficking that minor under 18 U.S.C. § 1591(a)(1). Still, Plaintiffs H.A. and L.Y. were repeatedly sold for sex at the Motel, and despite such crimes obviously occurring, Defendants failed to intervene in any way to report or stop such crimes.

11.

Plaintiffs bring this suit against Defendants to recover for the physical, emotional, and mental harm caused by their sexual exploitation at the Motel, which was permitted to occur as a direct and proximate result of Defendants' negligent, reckless, and willful failures to prevent prostitution, crime, violence, and sex trafficking from occurring at their Motel.

## Parties, Jurisdiction, and Venue

12.

H.A. and L.Y. were each minors at the time of their sex trafficking alleged herein.

13.

At all times relevant to this Complaint, Defendants owned, managed, supervised, operated, oversaw, controlled the operation of, and rented rooms at the Motel, from which Defendants benefited financially.

14.

Defendants are each Georgia limited liability companies, and service on each Defendant can be made through the same registered agent, Nilesh K. Patel, whose address is 516 Cobblestone Drive NE, Atlanta, GA 30342.

15.

Jurisdiction and venue are proper as to Defendants, and Defendants were properly served with process in this action.

## Plaintiffs H.A. and L.Y.'s Sex Trafficking at the Motel

16.

During 2014 and 2015, H.A. and L.Y. were each minors.

17.

During this time period in 2014 and 2015, H.A. and L.Y. were trafficked on and off for different periods of time (but on numerous occasions more than a week at a time) at the Motel by the same sex trafficker.

18.

While at the Motel, H.A. and L.Y.'s sex trafficking occurred openly and obviously and was observed by the Motel employees, who also participated with the trafficker in allowing the trafficking to continue.

19.

H.A. and L.Y. wore revealing clothing in and around the Motel and were purchased by numerous buyers each day.

20.

During the time H.A. and L.Y. were being trafficked for sex, Motel employees lived at the Motel themselves or, at minimum, staffed the Motel 24 hours per day / 7 days per week, and thus, Defendants and/or the other Motel employees could see the sex-trafficking activity that was occurring openly and publicly on the property.

21.

Motel employees frequently saw Plaintiffs H.A. and L.Y. and their trafficker at the Motel.

22.

Defendants and/or the other Motel employees had friendly, close personal relationships with Plaintiffs' sex trafficker, and among other things, the Motel employees would assist in letting Plaintiffs back into their rooms when locked out or bringing them towels and other needed personal items, and thus, the Motel would participate and allow the trafficking to continue without interruption.

23.

While Plaintiffs H.A. and L.Y. were trafficked for sex at the Motel, they exhibited numerous well-known and visible signs of sex trafficking victims, of which Defendants and the other Motel employees knew or should have known. These included Plaintiffs' young age and inappropriate dress, Plaintiffs being watched and monitored by different adult males, and Plaintiffs being forced to accompany numerous different men into their Motel rooms for short visits each day.

24.

Plaintiffs' sex trafficker operated openly and brazenly at the Motel. In addition to Plaintiffs H.A. and L.Y.'s trafficking, there were other sex trafficking victims at the Motel too.

25.

Due to the high number of victims being sold for sex at the Motel, a large number of buyers frequented the Motel each day. Defendants knew or should have

known that this was an indication of sex trafficking, and minor sex trafficking, at the Motel.

26.

Defendants knew or should have known that the Motel served as an open market for sex, including with victims H.A. and L.Y., based on all of the obvious activity that would occur in the open and public areas on Defendants' Motel property.

**Defendants' Knowledge of Prior Crime and Sex Trafficking at the Motel**

27.

For many years prior to Plaintiffs' trafficking, the Motel was rampant with other instances of sex trafficking, prostitution, crimes against women, dangerous illegal activity, drugs, and violence.

28.

Before and during Plaintiffs' sex trafficking at the Motel, Defendants and other Motel employees knew or should have known about the crime, including specifically the sex trafficking occurring at the Motel.

29.

Prior to Plaintiffs' sex trafficking at the Motel, Defendants and other Motel employees knew or should have known that rooms at the Motel were frequently used for short interactions of commercial sex with guests being trafficked at the Motel.

12

30.

Prior to and during Plaintiffs' trafficking at the Motel, the premises and its approaches were known for crime, prostitution, and sex trafficking, which is why Plaintiffs' sex trafficker kept Plaintiffs at the Motel to be sold for sex there. In short, Defendants provided a busy market for just that type of illegal activity.

**Defendants' Negligent Failure to Act**

31.

Defendants and the other Motel employees knew or should have known that obvious sex trafficking, including Plaintiffs' sex trafficking, was occurring every day at the Motel.

32.

Despite this knowledge, Defendants negligently and recklessly allowed the crimes perpetrated against Plaintiffs and other sex trafficking victims to continue.

33.

Despite the dangerous, illegal, and criminal activity at the Motel, Defendants negligently failed to implement appropriate security measures, policies, procedures, or training to identify, deter, or reduce such activity.

34.

Despite having actual or constructive knowledge of this illegal activity, Defendants negligently failed to take reasonable and necessary steps to stop such

13

illegal and dangerous activities from occurring.

35.

Additionally, Defendants negligently failed to provide proper training to their employees, including among other things, training them on the warning signs that prostitution or sex trafficking may be occurring at the Motel.

36.

Defendants also negligently failed to provide proper training to their employees on what they were supposed to do if they saw or suspected that dangerous or illegal activity, prostitution, or sex trafficking was occurring at the Motel.

37.

Defendants also negligently failed to train their staff in a reasonable and uniform manner, including, among other things, on how the staff were supposed to interact with the police and attempt to determine the nature and cause of crime occurring at the property, so that the Motel could better deter or prevent crime in the future.

38.

Defendants also negligently failed to develop a reasonable security plan to deter and prevent dangerous, violent, and illegal activity from continuing to occur at the property, including specifically prostitution, pimping, sex crimes, violence against women, and sex trafficking.

14

39.

Defendants knew or should have known that they were permitting the Motel to be used as a place of prostitution and sex trafficking.

**Defendants' Knowledge of Sex Trafficking Generally**

40.

Defendants knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' adoption of the Palermo Protocol, to prevent, suppress, and punish trafficking in persons.

41.

Defendants knew or should have known that during the relevant period Atlanta was a hub of sex trafficking and that the crime was prevalent in the city, including at the Motel. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking economies in the country.[2]  In 2007, Atlanta's sex trafficking economy

---

[2] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/ (last visited May 21, 2026); *see also* Meredith Dank, *et al.*, *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities*, Urban Institute, (March 12, 2014), 30-32, *available at* https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last visited May 21, 2026).

was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000. Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Defendants have received and retained some of those illicit profits through renting motel rooms used for the trafficking of Plaintiffs and other victims.

42.

Defendants knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[3] and as "the number one city for child sex trafficking."[4]

43.

Defendants knew or should have known that motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" City *of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

---

[3] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited May 21, 2026).
[4] *Id.*

16

44.

Defendants knew or should have known the following: The National Human Trafficking Hotline has reported that ninety-two percent of the calls it received involving motels and motels reported sex trafficking, and another two percent reported a combination of sex and labor trafficking.[5] And the Polaris Project found that "75% of [trafficking] survivors responding to Polaris's survey reported coming into contact with motels at some point during their exploitation . . . . Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from motel staff."

45.

Defendants knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States in 2004.[6]

46.

Defendants knew or should have known that the Code, which lays out well-established best practices for the hospitality industry to identify, address, and deter sex trafficking, identifies six reasonable and logical steps motels can take:

---

[5]    *Human Trafficking and Hotels & Motels*, Polaris Project, https://polarisproject.org/human-trafficking-and-hotels-motels/ (last visited May 21, 2026).
[6] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited May 21, 2026).

a. establish corporate policy and procedures against sexual exploitation of children;

b. train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c. include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d. provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e. support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

f. report annually on the company's implementation of Code-related activities.

47.

Defendants knew or should have known that ECPAT is only one of several high-profile organizations that have for years given motels the tools to address the scourge of sex trafficking at motels.

48.

Defendants knew or should have known that during the relevant period the

Department of Homeland Security ("DHS") published guidelines to help motels detect and respond to human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other motel personnel, to be vigilant in looking for signs of human trafficking at motels and hotels, such as:

    a. Persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b. persons who lack freedom of movement or are constantly monitored;

    c. persons who have no control over or possession of money or ID;

    d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

    e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of motel staff entry into the room;

    f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

    g. extended stay with few or no personal possessions in the room;

    h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

    i. the same person reserves multiple rooms;

j.   a room is rented hourly, less than a day, or for an atypical extended stay;

k.   attempts to sell items to or beg from patrons or staff;

l.   cars in the parking lot regularly parked backward, so the license plates are not visible;

m.  loitering and solicitation of male patrons;

n.   waiting at a table or bar and picked up by a male (trafficker or customer);

o.   persons asking staff or patrons for food or money; and

p.   persons taking cash or receipts left on tables.

49.

Without a market, a place for the buying and selling of humans for sex, sex trafficking would cease to exist. Defendants, for a fee, provided that market, a private and anonymous market for Plaintiffs to be sold for sex at their motel.

**COUNT I:**
**STATUTORY LIABILITY: SEX TRAFFICKING 18 U.S.C. § 1595 and**
**MASHA'S LAW, 18 U.S.C. § 2255**

50.

Plaintiffs incorporate the paragraphs above as if fully restated herein.

51.

In violation of the Trafficking Victims Protection Reauthorization

Act ("TVPRA"), 18 U.S.C. § 1595(a) and 18 U.S.C. § 2255, Defendants knowingly benefitted from participation in a venture that Defendants knew or should have known engaged in acts in violation of the TVPRA.

52.

Defendants knowingly benefitted from Plaintiffs' sex trafficking by receiving revenue generated by the operation of the Motel, including the revenue generated for the room in which Plaintiffs were trafficked. Each day Plaintiffs were trafficked at the Motel, Defendants knowingly benefitted by receiving money from Plaintiffs' trafficking in the form of room-rental fees.

53.

Defendants participated in a Motel venture and knew or should have known that their operation of the Motel violated the TVPRA by harboring, maintaining, and falsely imprisoning Plaintiffs so that they could be sold for sex at the Motel. Defendants also participated in a venture by actively cooperating with, accepting bribes from, serving as a lookout for, and allowing Plaintiffs' sex trafficker to harbor, falsely imprison, and traffic Plaintiffs at the Motel.

54.

As part of their sex trafficking, Plaintiffs were falsely imprisoned at the Motel. Defendants also participated in a venture by actively cooperating with, accepting

21

bribes from, serving as a lookout for, and allowing Plaintiffs' sex trafficker to harbor, maintain, falsely imprison, and traffic Plaintiffs at Defendants' Motel.

55.

The venture in which Defendants participated was in or affecting interstate commerce.

56.

Defendants knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants' agents, employees, and representatives participated in Plaintiffs' child sex trafficking at the Motel. Defendants knew or should have known of this participation.

57.

Defendants also knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants' agents, employees, and representatives knew or should have known of other sex trafficking and illegal criminal activity occurring at the Motel.

58.

Defendants are directly and vicariously liable under 18 U.S.C. § 1595(a) and 18 U.S.C. § 2255 and for the actions of their agents and representatives.

59.

Plaintiffs have suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' participation in this venture.

60.

Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a) and 18 U.S.C. § 2255.

61.

Defendants are liable for damages arising from the indivisible injuries they caused Plaintiffs, whose damages were proximately caused by the acts discussed in this count.

62.

Plaintiffs were each under the age of 18 when they were trafficked at the Motel.

63.

Plaintiffs are victims of violations of 18 U.S.C. § 1591 and 18 U.S.C. § 2255 at the Motel.

64.

As described herein, Defendants knowingly benefited from participating in a

venture that they knew or should have known engaged in an act of sex trafficking at the Motel, including the harboring, maintaining, false imprisonment and other trafficking activities which harmed Plaintiffs.

65.

Plaintiffs suffered injuries as a result of Defendants' violations of 18 U.S.C. § 1591 and 18 U.S.C. § 2255, and Defendants face liability under such statutes.

66.

Thus, as described herein, Defendants are jointly and severally liable to Plaintiffs for compensatory and punitive damages, in an amount to be determined at trial.

**COUNT II**
**NUISANCE**

67.

Plaintiffs incorporate the paragraphs above as if fully restated herein.

68.

O.C.G.A. § 41-1-1 provides that "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

24

69.

O.C.G.A. § 41-1-2 provides that "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals."

70.

O.C.G.A. § 41-1-3 provides that "A public nuisance generally gives no right of action to any individual.  However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."

71.

O.C.G.A. § 41-3-1 provides that "Whosoever shall knowingly erect, establish, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges shall be guilty of maintaining a nuisance; and the building, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance."

**Public Nuisance**

72.

The Motel's history of rampant crime and illegal sex activity created a spillover effect that led to other crime occurring in the surrounding area.

73.

The Motel caused or contributed to a blighting effect on the surrounding community, so that the Motel negatively damaged all persons who came within the sphere of operation of the crime, sex trafficking, and prostitution at the Motel, although the effects on each person may have varied.

74.

The illegal prostitution and sex trafficking nuisance occurring at the Motel had an appreciable blighting effect on the surrounding community, permitting persons of questionable character, and encouraged idleness, loitering, vagrancy, and had a tendency to breed crime and debauch the morals of the community.

75.

The acts and omissions of Defendants in permitting prostitution and sex trafficking at the Motel caused special damages to Plaintiffs, as they are victims of child sex trafficking at Defendants' nuisance Motel and suffered damages to their health, including mental and emotional harm, pain and suffering, and Defendants are liable to Plaintiffs for all such damages.

26

## Public Nuisance Per Se

76.

The Motel constituted a statutory nuisance per se under Georgia law because Defendants knowingly and/or negligently turned a blind-eye and permitted illegal sexually related crimes to occur at the Motel including sex trafficking.

77.

A business where illegal practices are permitted constitutes a nuisance.

78.

A business, like the Motel, that allows prostitution and sex trafficking is a per se public nuisance under Georgia law. *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (1916) ("A lewd house is per se a 'public nuisance.'").

79.

Plaintiffs were directly harmed as a result of the sex crime nuisance at the Motel that permitted illegal sexual activity to occur there.

80.

Defendants are liable for nuisance (public nuisance and/or per se public nuisance) by reason of Defendants' failure to remedy the dangerous condition of prostitution and sex trafficking that persisted over a period of time as a continuous and repetitious condition and of which Defendants had express notice and knowledge, and whereby Plaintiffs were direct victims of such activity.

27

## DAMAGES

### 81.

Plaintiffs incorporate the paragraphs above as if fully restated herein.

### 82.

As a proximate and foreseeable result of Defendants' violations of the TVPRA, Masha's Law, and Georgia law, Plaintiffs sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiffs bring each and every claim permissible under Georgia and federal law against Defendants for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiffs seek all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia and federal law, including, but not limited to:

   a. Personal injuries;

   b. Past, present and future conscious pain and suffering;

   c. Loss of enjoyment of life;

   d. Mental anguish and emotional distress;

   e. Incidental expenses;

f. All special, compensatory, economic, punitive, and other damages permissible under Georgia and federal law; and

g. Consequential damages to be proven at trial.

83.

Plaintiffs are entitled to an award of punitive damages without limitation or cap because the actions of Defendants and their employees were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

84.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiffs undue expense. Thus, Plaintiffs are entitled to recover their necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68, and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiffs are entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiffs pray for a judgment to be awarded to them and against Defendants for the following:

a. Process issue as provided by law;

b.  Plaintiffs be awarded actual damages in amounts to be shown at trial from Defendants;

c.  Plaintiffs be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

d.  Plaintiffs be awarded a trial by jury; and

e.  Plaintiffs have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

Respectfully submitted on May 26, 2026.

**ANDERSEN, TATE & CARR, P.C.**

/s/ *Tyler Dillard*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Tyler Dillard
Georgia Bar No. 115229
tdillard@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Jennifer M. Webster
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre

30

1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

Respectfully submitted on May 26, 2026.

**ANDERSEN, TATE & CARR, P.C.**

/s/ *Tyler Dillard*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Tyler Dillard
Georgia Bar No. 115229
tdillard@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Jennifer M. Webster
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680