UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

H.A. and L.Y.,

     Plaintiffs,

v.

KHUSHAL HOSPITALITY, LLC,
KHUSHAL HOSPITALITY
MANAGER, LLC, and
JOHN DOES 1-5,

     Defendants.

CIVIL ACTION FILE

NO. 1:26-cv-02921-TWT

## Introduction

Defendants do not challenge Plaintiffs' TVPRA claims. Thus, they necessarily accept for purposes of this motion that Plaintiffs adequately alleged Defendants knowingly benefited from, participated in, and knew or should have known about Plaintiffs' sex trafficking. Having conceded all of that, Defendants still argue that such conduct can't be the basis of a public nuisance claim, punitive damages, attorneys fees, or liability under 18 U.S.C. § 2255. That doesn't make sense.

Defendants' motion is premised on the notion that the complaint alleges only passive inaction. It does not. Plaintiffs allege that Defendants *either* knew they were

profiting and participating in Plaintiffs' sex trafficking, *or* they should have known they were.

Thus, Plaintiffs allege Defendants *knowingly* facilitated and profited from the sex trafficking of minor children at their motel—including Plaintiffs—by assisting traffickers, providing minors access to rooms used for trafficking, and allowing the trafficking operation to continue openly in exchange for payment. Accepting those allegations as true—as the Court must at this stage—Plaintiffs have adequately alleged conduct that is a *per se* public nuisance under Georgia law, directly violates 18 U.S.C. § 1591 (providing a civil remedy under § 2255), and supports punitive damages and fees.

As such, Defendants' motion should be denied.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *Find What Inv'r Grp. v. Find What.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678.

## FACTUAL BACKGROUND

In 2014 and 2015, while both were minor children, Plaintiffs H.A. and L.Y. were repeatedly trafficked for sex at Defendants' Motel 6 located at 1200 Virginia Avenue, Atlanta, Georgia. Dkt. No. [1] ¶¶ 1, 7, 16–18. Plaintiffs' trafficking was not hidden; it operated openly and visibly at the motel, with multiple victims housed in multiple rooms, a steady stream of buyers visiting throughout the day, and motel employees repeatedly interacting with both Plaintiffs and their traffickers. *Id*. [1] ¶ 5.

Plaintiffs were trafficked by the same man and his accomplices, who rented multiple rooms at the motel and kept multiple trafficking victims in separate rooms

3

so that multiple victims could be sold for sex at the same time. *Id.* [1] ¶ 5(a). Plaintiffs were sold to numerous buyers every day and those buyers would accompany them into the motel rooms for short visits. *Id.* ¶¶ 5(e), 19, 25.

Plaintiffs were forced to wear revealing clothing and openly solicit buyers around the motel property, resulting in a large number of buyers frequented the property and Plaintiffs' traffickers' rooms each day. *Id.* ¶¶ 5(b), 19, 25. One of the trafficker's accomplices would also regularly and openly sit in his car at the side entrance to monitor buyers entering and leaving the building. *Id.* ¶¶ 5(b), 5(c), 19, 25.

Defendants' employees not only saw this activity, but repeatedly assisted and facilitated it as well. Front desk employees knew Plaintiffs were staying in rooms rented by their trafficker and routinely gave the minor Plaintiffs replacement key cards when they became locked out of their rooms even though the room was in the trafficker's name. *Id.* ¶ 5(f). Housekeeping staff regularly brought them towels, tampons, and other items, removed trash containing multiple used condoms, and otherwise interacted with Plaintiffs while they were being trafficked. *Id.* ¶ 5(f). Housekeeping staff knew so much about Plaintiffs that at times they brought Plaintiffs tampons because they knew Plaintiffs didn't have any. *Id.*

Once, H.A. was locked out of her room and later came back to retrieve a zebra print duffel bag. Housekeeping had been to her room and filled the bag with the

items left out—boxes of condoms, sex paraphernalia, drugs, and other items. *Id.* ¶ 5(g). The duffel bag was taken to the front office and given back to H.A. *Id.*

Motel employees maintained close personal relationships with the trafficker, ***agreed not to call police***, knowingly assisted the minor Plaintiffs in accessing rooms rented by the trafficker, repeatedly interacted with Plaintiffs while they were being sold for sex, and otherwise assisted conduct that allowed the trafficking operation to continue. *Id.* ¶¶ 5(d), 5(f), 5(g), 18, 22.

Based on these allegations, Plaintiffs contend that Defendants knew or should have known that Plaintiffs were being trafficked at the Motel and nevertheless continued to rent rooms, profit from the operation of the Motel, and permit the trafficking to continue. *Id.* ¶¶ 4–6, 13, 18, 22, 49.

## ARGUMENT

### I.    Plaintiffs state a claim under Masha's Law.

Defendants do not challenge Plaintiffs' TVPRA claims. Accordingly, for purposes of this motion, the Court must accept as true Plaintiffs' allegations that Defendants knowingly benefited from participation in a venture, participated in that venture, and knew or should have known about the venture's sex trafficking violations, including Plaintiffs' trafficking. Those same allegations support Plaintiffs' claim under 18 U.S.C. § 2255.

Defendants argue that Plaintiffs only bring a beneficiary claim under 18 U.S.C. § 1595 and do not allege a violation of 18 U.S.C. § 1591. The complaint alleges both. Dkt. No. [1] ¶ 63.

First, Plaintiffs allege they were victims of violations of § 1591 while they were minors and therefore may seek relief under 18 U.S.C. § 2255. The complaint expressly alleges that "Plaintiffs are victims of violations of 18 U.S.C. § 1591 and 18 U.S.C. § 2255 at the Motel." Dkt. No. [1] ¶ 63. That allegation is supported by detailed factual allegations describing the repeated commercial sexual exploitation of the minor Plaintiffs at Defendants motel. *Id.* ¶¶ 5–11; 16–26. In fact, every claim under § 1595 necessarily *requires* a predicate violation of Chapter 77. 18 U.S.C. §1595 ("An individual who is a victim of a violation of this chapter may bring a civil action . . . ."). In a minor sex trafficking case, that predicate violation is § 1591. Plaintiffs plainly allege that violation. Dkt. No. [1] ¶ 63. And Defendants do not dispute that this same element is met for purposes of Plaintiffs' TVPRA claim under § 1595, which is alleged within the same section and in the same paragraph. *Id.* (alleging violation of § 1591 in Count I, asserting claims under 18 U.S.C. §§ 1595 and 2255.).

Second, Defendants incorrectly assume that § 2255 allows civil claims only against criminal perpetrators. It does not. Section 2255 only identifies who may *bring* suit, it says nothing about who may be sued. Section 2255 authorizes a civil

action by a person who, while a minor, was a victim of a violation of § 1591 and suffered injury as a result of that violation.

Defendants' argument reads words into § 2255 that Congress did not include and conflates two distinct questions. Section 2255 answers the question of who may sue and provides them with additional procedural protections. It does limit who may be sued. Congress has repeatedly demonstrated—and did in § 1595—that it knows how to define a class of proper civil defendants when it chooses to do so. Section 2255 contains no such limitation.

Even if Defendants' rewriting of § 2255 into a perpetrator-only claim was correct, their motion should be denied. Plaintiffs independently allege that Defendants themselves violated § 1591 by knowingly harboring, maintaining, and financially benefitting from the trafficking of minor children. *See* 18 U.S.C. § 1591(a)(1). Plaintiffs therefore state a claim under §2255 either way.

**A.     Section 2255 ("Masha's Law") provides for beneficiary liability.**

Section 2255 identifies who may sue and what procedural protections apply, *not* who may be sued. In relevant part, § 2255 provides:

> Any person who, while a minor, was a victim of a violation of section . . . 1591 . . . of this title and who suffers personal injury as a result of such violation . . . may sue in any appropriate United States District Court.

18 U.S.C. § 2255. Section 2255 authorizes suit by a person who, while a minor, was a victim of a violation of § 1591. 18 U.S.C. § 2255.

7

Contrary to Defendants' argument, § 2255 does not define which civil defendants may be held liable for injuries resulting from enumerated criminal violations. Its text provides no restriction to suits against only criminal perpetrators (or any other limited class of defendants). Instead, "the plain language of § 2255 provides only that a minor victim of enumerated sex offenses "may sue in any appropriate" district court; the statute does not specify against whom that lawsuit may be brought." *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012). Simply put, it defines a plaintiff but not a defendant.

Defendants' reading would require inserting words Congress did not include: "may sue *the perpetrator*" or similar language. "Had Congress intended to limit liability in this respect, it could have done so by including such qualifying language in the statute." *Id.* at 1340. When Congress intends to confine a civil cause of action to perpetrators of a crime, it knows how to do so, just as it expressly did in its neighbor statute, § 1595. *Id.*; *see also* 18 U.S.C. § 1595(a) ("may bring a civil action *against the perpetrator* (or whoever knowingly benefits [from a violation of Title 18, Chapter 77]"). As another court in the Eleventh Circuit observed, "[n]othing in § 2255 limits claims under the statute to only perpetrators." *Bates v. Seuqel Youth & Family Servs., LLC*, 2:23-CV-01063-RDP, 2025 WL 2917756, at *5 (N.D. Ala. Oct. 14, 2025) (holding plaintiff could bring a beneficiary claim under Section 2255); *see also Bates v. Sequel Youth & Family Servs., LLC*, 2:23-CV-01063-RDP, 2026 WL

8

86833, at *5 (N.D. Ala. Jan. 12, 2026) (holding, on reconsideration, that "Plaintiffs here were minor victims of alleged § 1589(a) and § 1590(a) violations and contend they suffered personal injuries. They sued Ripley, who they contend was a beneficiary of those violations under 18 U.S.C § 1595. Section 1595 creates beneficiary liability."). It follows that § 2255 provides a civil claim against both perpetrators and beneficiaries of enumerated crimes, including violations of § 1591 as Plaintiffs have alleged here.

Section 2255's only limitation prescribes *who* may sue. It defines a class of plaintiffs as victims of various enumerated criminal statutes who are entitled to invoke the remedies and protections provided by § 2255, such as no statute of limitations. Section 2255 then provides those victims a civil cause of action for injuries suffered "as a result of" the trafficking. The statute's focus is on the plaintiff's victimization and resulting injury, not on restricting the categories of civil defendants who may be held liable.

Defendants' attempt to narrow the scope of § 2255 by reading in the requirement that the civil defendant be a criminal perpetrator conflicts with applicable principles of statutory interpretation. "As a general matter, courts eschew narrow interpretations of remedial statutes. Instead, remedial statutes are normally accorded broad construction in order to effectuate their purpose." *Jones v. MARTA*, 681 F.2d 1376, 1380 (11th Cir. 1982) (citing *Peyton v. Rowe*, 391 U.S. 54, 65

(1968)). This principle applies with full force to Section 2255, which is a remedial statute:

> Although the predicate criminal offenses may be designed to punish the criminal offender, § 2255 is designed for a different purpose—namely, to compensate the victim. And because the predicate criminal offenses and § 2255 are designed for different purposes, it does not follow that there must be symmetry in liability. In fact, the broad remedial purpose of § 2255—prescribing a minimum amount of statutory damages— would appear to counsel against limiting the scope of civil liability.

*Jane Doe No. 8*, 860 F. Supp. 2d at 1340. Defendants' proposed narrowing run directly contrary to these well-established principles.

Section 2255 was not enacted to narrow the class of civil defendants recognized under § 1595. Rather, it *expands* the remedies and procedural protections to a narrower class of victims—those trafficked as minors. The statute's causation-based standard readily encompasses claims against defendants whose liability arises under established civil-liability theories, including beneficiary liability. *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024). Thus, properly understood, § 2255 establishes two requirements for a claim: (1) the plaintiff was a minor when she was a victim of a violation of criminal trafficking § 1591, and (2) the plaintiff seeks to recover for "personal injury as a result" of that trafficking. Plaintiffs' allegations satisfy both requirements.

As articulated above Plaintiffs have alleged that they are victims of criminal trafficking under § 1591, committed by their traffickers and defendants. A criminal

10

violation by either/both brings Plaintiffs within the class of victims authorized to sue under § 2255. They have also articulated that the civil remedy they seek is one for "personal injury" sustained "as a result of" their criminal trafficking. More specifically, Plaintiffs state a claim under § 2255 because Defendants are liable to them as beneficiaries of sex trafficking. This derives from the same standard Congress authorized in § 1595(a) of the TVPRA, which recognized a cause of action for victims of certain trafficking crimes, including those defined in § 1591(a), to recover damages resulting from their trafficking.

Section 2255's text supports importing beneficiary liability akin to that in § 1595(a). In § 1595(a), Congress established a personal injury-type cause of action reflecting its judgment that a knowing beneficiary's conduct is sufficiently connected to a victim's injuries to warrant civil accountability. In other words, a knowing beneficiary's conduct in violation § 1595(a) is a "personal injury" suffered by a plaintiff-victim "as a result of" criminal section trafficking pursuant to § 1591 within the meaning of § 2255.

Section 2255's "as a result of" requirement imposes nothing more than a but-for causal connection between the § 2255 defendant's conduct—here, knowingly benefiting from participating in a venture it knew or should have known violated § 1591—and the injuries suffered by the victim-plaintiff. *See Brown v. Gardner*, 513 U.S. 115, 119 (1994) (rejecting argument that "'as a result of' language in [38

11

U.S.C.] § 1151 signifies a proximate cause requirement that incorporates a fault test"

and holding instead that such "language is naturally read simply to impose the

requirement of a causal connection"); *see also Burrage v. United States*, 571 U.S.

204, 213–14 (2014) (agreeing that a "statute requiring suppression of evidence

'obtained as a result of' police misconduct 'requires, at a minimum,' a but-for causal

relationship" (cleaned up) (quoting *State v. Richardson*, 295 N.C. 309, 322–32, 245

S.E.2d 754, 763 (1978))); *Murakami v. United States*, 398 F. 3d 1342, 1352 (Fed.

Cir. 2005) (collecting other cases in which federal courts have interpreted "as a result

of" to imply a simple causation requirement); *Cause*, AMERICAN HERITAGE

DICTIONARY (5th ed. 2022) (defining "cause" as "1.a. [t]he producer of an effect,

result, or consequence" and "1.b. . . . a person, event, or condition, that is responsible

for an action or result"; and defining "caused, causing, causes" as "1. To be the cause

of or reason for; result in.").[1] Here, Plaintiffs have alleged that their injuries were

the "result of" Defendants' beneficiary conduct—the same conduct establishing

---

[1] Some courts have articulated § 2255's elements, including causation, in terms of Article III standing. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024) ("The text [of § 2255] provides no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in § 2255, so long as plaintiffs' claims comport with the traditional requirements of standing,—injury in fact, causation, and redressability."). Plaintiffs allegations meet such a standard, too.

their liability under the TVPRA. (And, again, Defendants have not disputed causation as it relates to their parallel TVPRA civil beneficiary liability in this case.)

Interpreting § 2255 as coextensive with § 1595(a)'s beneficiary-liability cause of action, in addition to its textual fidelity, is also consistent with sound principles of statutory construction. Courts regularly refer to statutory context and common statutory schemes when analyzing and interpreting statutes. *See Northcross v. Bd. of Edu. of Memphis City Schools*, 412 U.S. 427, 428 (1973) (per curiam) (interpreting statutes *in pari passu*—on equal footing—where they shared "similarity of language" and a "common raison d'etre"—*i.e.*, their purpose); *United States v. Penn*, 63 F.4th 1305, 1313 (11th Cir. 2023) ("We prefer to read terms consistently across multiple statutes on the same subject because 'practical experience in the interpretation of statutes' establishes that 'a legislative body generally uses a particular word with a consistent meaning in a given context.'" (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972))); *Ala. Educ. Ass'n v. State Superintendent of Edu.*, 746 F.3d 1135, 1158 (11th Cir. 2014) (explaining *in pari materia* principle, which provides that "statutes on the same subject matter should be construed together so as to harmonize them."); *see also Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013) (conducting statutory analysis in reliance upon "statutory context strongly favor[ing]" the Court's interpretation);

13

*Cross v. Monett R-I Bd. of Educ.*, 431 F.3d 606, 611 (8th Cir. 2005) ("[I]n construing a statute, a court may look to related statutes.")

Incorporating principles of civil liability under § 1595(a) illuminates the scope of the broad remedies afforded victims under § 2255. Both §§ 1595 and 2255 provide civil remedies to victims of, among other criminal acts, § 1591—that is, they share the same purpose of compensating victims of sex trafficking (and other crimes). *See Ala. Educ. Ass'n*, 746 F.3d at 1158 ("Statutes are *in pari materia*—pertain to the same subject matter—when they . . . have the same purpose or object." (alteration in original) (quoting 2B Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 51:3 (7th ed. 2012))). So long as there are no patent textual differences, as with § 1595's express limitation to a class of defendants, sound statutory construction counsels in favor of allowing § 1595(a) to inform § 2255's elements.

Consistent with these principles, Plaintiffs have sufficiently alleged Defendants' beneficiary liability under both §§ 1595(a) and 2255. This Court should join its sister district by rejecting Defendants' position and holding that beneficiary liability may be pursued under § 2255. *Bates, LLC*, 2:23-CV-01063-RDP, 2025 WL 2917756, at *5.

Because Defendants' argument is contrary to the text, context, and purpose of § 2255, Defendants' motion should be denied.

**B.      Perpetrator Liability**

Even if Defendants were right (they're not) that § 2255 can only be brought against perpetrators, their motion still fails for the simple reason that Plaintiffs have alleged that Defendants themselves violated § 1591. Defendants' argument depends on a factual finding not alleged in the complaint; that they were simply passive landlords who failed to stop trafficking. The complaint alleges something different, though: active facilitation of a trafficking operation involving Plaintiffs, who were minor children at the time. Plaintiffs expressly allege facts supporting an inference that Defendants actually knew of their trafficking and actively facilitated it.

Section 1591 imposes liability on anyone who, *inter alia*, knowingly harbors or maintains a person for a commercial sex act, or who knowingly benefits from participation in a venture engaged in such conduct. § 1591(a). Plaintiffs allege facts supporting both theories of liability.

It doesn't matter that "should have known" is insufficient for § 1591 criminal liability because the complaint repeatedly alleges *actual knowledge.* The complaint alleges that Defendants maintained close, friendly relationships with Plaintiffs' trafficker, agreed not to call the police, knowingly gave victims like Plaintiffs access to rooms they did not rent, saw the trafficking activity involving Plaintiffs and others, removed condoms and other sexual paraphernalia from the room and provided the needed towels for Plaintiffs to clean themselves between the numerous

15

commercial sex encounters housed in Defendants' motel. Dkt. No. [1], ¶ 5. These are factual allegations—not conclusions—from which actual knowledge can be reasonably inferred.

The conduct alleged in the complaint falls within the conduct prohibited by § 1591. Plaintiffs allege Defendants knowingly harbored and maintained them as minor children for commercial sex acts. Dkt. No. [1], ¶¶ 53, 64. Knowingly harboring and maintaining minors for commercial sex and having an opportunity to observe them (in the case of a minor) is itself sex trafficking; a direct violation of § 1591(a)(1). What's more, Plaintiffs allege that Defendants knowingly benefitted financially from *knowingly* participation in a venture[2] that engaged in the trafficking of the minor Plaintiffs, which also is criminalized by § 1591(a)(2). That is *also* the crime of sex trafficking. If one should have known he was profiting from trafficking, he can be sued under § 1595 and § 2255. If he *knew* he was profiting from sex trafficking, he is a perpetrator, having violated § 1591(a)(2). As to Defendants, Plaintiffs have alleged both.

Courts have already recognized that hotel operators can criminally violate § 1591. *U.S. v. Bhimani*, Crim. No. 3:17-cr-00324-MEM (M.D. Pennsylvania) ECF 167. In *Bhimani*, no hotel employee was acting as a "lookout." Relevant to the sex

---

[2] By not moving for dismissal of the TVPRA claim, Defendants must accept that Plaintiffs adequately pled participation in a venture.

trafficking counts, the evidence showed that the hotel owner-defendants

> knowingly rented rooms to drug and sex traffickers, gave discounts, allowed criminal guests to check in under assumed names, allowed guests to check in without showing identification, refrained from kicking guests out despite disruptive, criminal behavior, and allowed criminals to stay and work out of their room and pay the room rate with the proceeds. For example, evidence showed that Nanita Jewett, Donna Garippa, Maria Macedo, Krunal Patel, Kerri Labar, Isis Rosales, a cook named Butch, and Francis Joseph all knew about criminal activity occurring at the hotel. Jewett admitted to being aware of sex trafficking and telling victims to be careful, and Francis Joseph asked pimps about their girls and paid at least one victim for sex. Jewett and Joseph continued to rent rooms to these guests, and the hotel received the financial benefit [by having its room occupied].

*Id.* 2021 WL 5179196, at *9.

The hotel company in *Bhimani* was convicted based on conduct materially similar to that alleged here—knowingly renting rooms to traffickers, permitting the activity to continue, and profiting from the operation.

The allegations in Plaintiffs' complaint are at least as strong as those supporting the convictions in *Bhimani*. Plaintiffs allege that motel employees knowingly provided minor trafficking victims access to rooms rented in another person's name, agreed not to contact law enforcement, accepted bribes, acted as lookouts, repeatedly interacted with minor trafficking victims while they were being sold for sex, and facilitated the continuation of the trafficking operation. Those allegations support an inference that Defendants knowingly harbored, maintained, and financially benefitted from the trafficking of Plaintiffs, minor children. The

17

allegations satisfy the specific conduct prohibited by § 1591, and *Bhimani* proves hotel operators can be criminally liable under that statute. *Roseberry v. Studio 6 Delk Rd., LLC*, 815 F. Supp. 3d 1325, 1338 (N.D. Ga. 2025) (denying motion to dismiss as to § 2255 claims because, based on plaintiffs' TVPRA allegations, "the Court can infer that Defendants either (1) harbored and maintained Plaintiffs in violation of § 1591(a)(1), or (2) benefitted financially from participating in a motel venture that did the same in violation of § 1591(a)(2).").

Because Plaintiffs have alleged that Defendants knowingly harbored and maintained Plaintiffs so they could be sold for sex at the motel while accepting bribes and acting as lookouts for Plaintiffs' sex trafficker, Plaintiffs have alleged that Defendants violated § 1591 themselves. Dkt. No. [1] ¶ 53. Thus, even under Defendants' improper interpretation of § 2255, Plaintiffs have stated a claim.

## III. For the same reasons, Plaintiffs state a public nuisance and public nuisance *per se* claim.

### A. Public Nuisance *per se*

Under Georgia law, a house used for prostitution is a public nuisance *per se. Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (1916) ("A lewd house is per se a public nuisance."). Because a public nuisance *per se* arises from the unlawful conduct itself, Plaintiffs need not establish the additional elements ordinarily associated with nuisance claims.

18

Again, as in the prior section, Plaintiffs have alleged that Defendants knowingly committed acts of sex trafficking against them and permitted prostitution and sex trafficking to occur at the property. Dkt. No. [1] ¶¶ 5, 53. (Plaintiffs also allege liability based on constructive knowledge.) Plaintiffs allege specific facts showing Defendants permitted this illegal activity: motel employees packed up sex paraphernalia in a bag to give back to a minor the employees knew was being sold for sex at the motel; they took away condoms and brought towels, they repeatedly gave minors access to rooms they were not renting, and which were one of several rooms their trafficker had at any given time. *Id.* ¶ 5.  Plaintiffs allege motel employees agreed not to call the police, accepted bribes from the trafficker, and acted as lookouts. *Id.* ¶¶ 5(d), 53, 54. Plaintiffs repeatedly allege the Motel 6 permitted prostitution and sex trafficking at the motel. Dkt. No. [1] ¶¶ 8, 5(b), 39, 74, 75, 76, 79.

Georgia courts have long recognized that a hotel may constitute a lewd house even where lawful lodging activity occurs alongside the unlawful conduct and even where the proprietor lacks actual knowledge of the specific act of prostitution. In *Fitzgerald v. State*, the court upheld a conviction for maintaining a lewd house where ***"[o]nly one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act."*** 10 Ga. App. 70, 71, 72 S.E. 541

19

(1911) (emphasis added). The hotel operated as a restaurant and lodging house and lawful guests stayed there as well as those engaged in prostitution. *Id.*

Plaintiffs allege far more than the conduct deemed sufficient in *Fitzgerald.* There, only a single act of prostitution was proven and the proprietor lacked actual knowledge of that act. Here, Plaintiffs allege repeated prostitution and sex trafficking of minor children, actual and constructive knowledge by motel employees, active assistance to traffickers, and direct facilitation of the trafficking operation. Those allegations readily state a claim for public nuisance *per se* under Georgia law.

## B.    Public Nuisance

Defendants' argument rests on a fundamental misreading of O.C.G.A. § 41-1-3. The phrase "the public does not participate" does not refer to whether members of the public enter the premises, commit crimes there, purchase illegal goods, or otherwise engage in the conduct constituting the nuisance. Rather, it addresses a different question entirely: whether the plaintiff suffered a special injury distinct from that suffered by the public generally. The provision is a standing requirement, not a limitation on what may constitute a public nuisance.

The Georgia Supreme Court explained this point more than a century ago in *Ison v. Manley*, holding that the statute concerns whether a plaintiff has suffered "special damage outside of that which also annoys and hurts the public." 76 Ga. 804,

20

807 (1886). If the plaintiff suffers only the same injury as the public generally, the claim belongs to the public. If the plaintiff suffers special damage distinct from the public generally, a private right of action exists under O.C.G.A. § 41-1-3. The Georgia Supreme Court explained:

> The mayor and council must conclude, as they did, that he can show nothing but the charge he has put on paper, and *if that does not show special damage outside of that which also annoys and hurts the public*, the mayor and council, while they may, if they see fit, abate the encroachment as a public nuisance, of their own accord, if they find it such, yet they may well say to him, "*You show no private, special damage to your person or your property, and we prefer to take care of the public ourselves*; therefore, your interference in what does not concern you more than the public has no sanction of law, and your complaint in behalf of the public is dismissed."

*Id.,* 76 Ga. at 807 (emphasis added); *see also Georgia Chem., etc., Co. v. Colquitt*, 72 Ga. 172, 172 (1884) ("If a public nuisance causes *special damage* to an individual, in which the public do not participate, such *special damage gives a right of action*.") (emphasis added).

Defendants identify no Georgia case adopting their interpretation that the public participated in the nuisance. Nor could they. If Defendants' interpretation were correct, a house of commercial sex could never be a public nuisance because buyers of sex visited for sex. A gambling house could never be a public nuisance if gamblers entered it to gamble. A drug house could never be a public nuisance if drug buyers entered it to buy drugs. Georgia public nuisance law has never understood the statute so narrowly. Instead, Georgia courts have repeatedly treated houses of

21

prostitution, gaming houses, disorderly houses, and, more recently, hotels that facilitate prostitution and sex trafficking as the paradigm examples of public nuisances.[3]

---

[3] *See, e.g., E.M. v. Tucker Inn Inc.*, 1:22-CV-02559-WMR, 2024 WL 4005218, at *6 (N.D. Ga. July 15, 2024) (As to public nuisance, "There are . . . disputed facts about whether Defendant took preventative measures to stop sex trafficking at its hotel."); *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1346 (N.D. Ga. 2024) ("there is ample evidence from which a jury could find that Defendant fostered an environment that permitted sex trafficking, prostitution, and other criminal activity to repeatedly occur on its premises."); *Jane Doe v. Suresh & Durga, Inc.*, 20A83795-5, (State Ct. Dekalb Cnty., May 8, 2024) ("The evidence of record [shows] the sex trafficking, pimping, and prostitution that the then-adolescent Plaintiff was subjected to was common at the Motel. Defendant disclaims knowledge or awareness of such repeated conduct at the Motel before the incident. Other evidence, however, supports the inference that Defendant permitted the Motel to become a sanctuary of sex trafficking, pimping, prostitution, and the sexual exploitation of vulnerable individuals."); *Birdwell v. State*, 112 Ga. App. 836, 837 (1965) ("A charge of keeping and maintaining a common, ill-governed and disorderly house to encourage idleness, gaming, drinking, or other misbehavior, may be shown by proof of repeated immoral acts of [prostitution or other unlawful sexual acts] committed therein with the knowledge and approval of defendant."); *Frazier v. State*, 93 Ga. App. 204, 206-07 (1956); *Martin v. State*, 62 Ga. App. 902, 904-05 (1940) (discussing common law disorderly houses generally); *Brindle v. Copeland*, 145 Ga. 398, 398 (1916) ("A lewd house is per se a "public nuisance."") (citing 4 BLACKSTONE, supra, at *168; JOYCE & JOYCE, supra, § 12); *Fanning v. State*, 17 Ga. App. 316, 317 (1915) ("The specific kinds of disorderly houses which are regarded in law as nuisances per se are bawdy-houses and gaming-houses.") (quoting 14 CYCLOPEDIA, supra, at 484); *Cotton v. City of Atlanta*, 10 Ga. App. 397, 399 (1912*); Fitzgerald v. State*, 10 Ga. App. 70, 71-72 (1911) ("Only one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some lewd women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests."); *Thrower v. State*, 117 Ga. 753, 757 (1909) (discussing common law construction of statute prohibiting the keeping of a gaming house, a

Defendants only other argument regarding Plaintiffs' non-*per se* public nuisance claim is that Plaintiffs failed to allege harm to all persons coming within the sphere of the nuisance. But the complaint alleges precisely that. Plaintiffs allege the public nuisance as "the sphere of operation of the crime, sex trafficking, and prostitution at the Motel" and allege that all persons who encountered the nuisance were harmed by it. Dkt. No. [1] ¶ 73. Plaintiffs more specifically allege that other trafficking victims and women subjected to criminal conduct at the motel were harmed by the same nuisance. *Id.* ¶¶ 24, 27, 32, 41. At the pleading stage, those allegations are sufficient to state a claim for public nuisance.

Because Defendants' argument misreads the statute and ignores the allegations of the complaint, their motion should be denied.

## IV.    Punitive Damages and Attorneys Fees

Defendants' arguments on punitive damages and attorneys fees are brief non-sequiturs attacking—but ignoring—the complaint as a whole. Plaintiffs do not rely on bare recitations of statutory elements. As discussed above, Plaintiffs allege that

---

public nuisance); *Kessler v. State*, 119 Ga. 301, 303 (1904) (discussing common law lewd houses generally); *Clifton v. State*, 53 Ga. 241, 244 (1874) ("The words ""lewd house" import that it is a house given to the unlawful indulgence of lust, including fornication or adultery. A "lewd house" may properly be said to be a house in which fornication or adultery is practiced. Maintaining and keeping a lewd house is a distinct offense under the statute. So if a person shall maintain and keep any *other place*, as a booth or tent, for the practice of fornication or adultery, either by himself, herself, or others, such person would be guilty under the statute.").

23

Defendants knowingly participated in and facilitated the sex trafficking of Plaintiffs, minor children at the motel. Among other things, Plaintiffs allege that motel employees accepted bribes from Plaintiffs' traffickers, acted as lookouts, agreed not to contact law enforcement, provided minor trafficking victims access to rooms they did not rent, and otherwise facilitated the trafficking operation. Dkt. No. [1] ¶¶ 5, 53–54. Accepting those allegations as true, as the Court must at this stage, Plaintiffs have plainly alleged conduct sufficient to support punitive damages and attorneys fees.

Defendants cite no authority holding that punitive damages must be dismissed where a complaint plausibly alleges knowing participation in child sex trafficking. Nor do they dispute that punitive damages are recoverable under the TVPRA. They are. "[T]he TVPRA authorizes punitive damages." *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017). "Every Court of Appeals to address this issue" has agreed. *Moore v. Rubin*, 724 F. Supp. 3d 93, 106 (E.D.N.Y. 2024), aff'd, 160 F.4th 271 (2d Cir. 2025) (citing *Warfaa v. Ali*, 1 F.4th 289, 293-96 (4th Cir. 2021); *Adhikari*, 845 F.3d at 206; *Francisco v. Susano*, 525 Fed. Appx. 828, 834 (10th Cir. 2013); *Ditullio v. Boehm*, 662 F.3d 1091, 1096-1102 (9th Cir. 2011).

Defendants' argument regarding attorneys fees fares no better. Plaintiffs seek attorneys fees under § 1595, which expressly authorizes recovery of "reasonable attorneys fees." Defendants do not move to dismiss the § 1595 claim and offer no

explanation why a remedy expressly authorized by that statute should be dismissed at the pleading stage. Still, having alleged Defendants' actual participation and criminal violations against Plaintiffs, i.e., child sex trafficking, as well as their participation via constructive knowledge, is sufficient to meet the willful or wanton standard under Georgia law.

Finally, Plaintiffs do not bring an independent negligence count. The complaint simply describes Defendants' conduct as negligent.

## CONCLUSION

Because Defendants misread § 2255, misconstrue Georgia public nuisance law, and ignore allegations supporting both beneficiary and perpetrator liability under § 1591 and § 1595, Plaintiffs have more than plausibly stated their claims. Defendants' motion should therefore be denied in its entirety.

Respectfully submitted on June 29, 2026.

ANDERSEN, TATE & CARR, P.C.


*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
TYLER DILLARD
Georgia Bar No. 115229
tdillard@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com


One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.


*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
TYLER DILLARD
Georgia Bar No. 115229
tdillard@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile